UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE ESTATE OF COREY HILL BY
PERSONAL REPRESENTATIVE RUDOLPH HILL,

        Plaintiff,

                                            Case No. 15-cv-10079
                                            Honorable Gershwin A. Drain

v.

CHRISTOPHER MIRACLE,

        Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#34]**

**I.    INTRODUCTION**

On January 9, 2015, decedent Corey Hill filed the instant action pursuant to 42 U.S.C. § 1983 claiming that Defendant, Christopher Miracle, violated the Fourth Amendment's prohibition against excessive force when he tasered him while he was suffering from a diabetic episode. The Complaint also asserts state law claims of assault and battery and intentional infliction of emotional distress. On October 29, 2015, this Court entered an Order Substituting the Estate of Corey Hill by Personal Representative Rudolph Hill as the named Plaintiff.

Presently before the Court is the Defendant's Motion for Summary Judgment, filed on March 25, 2016. Defendant argues he is entitled to qualified immunity because Plaintiff cannot establish a Fourth Amendment violation nor that the right Defendant is alleged to have infringed was clearly established. This matter is fully briefed and a hearing was held on May 19, 2016. For the reasons that follow, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment.

**II.  FACTUAL BACKGROUND**

Decedent Hill was a diabetic. On June 23, 2013, he was suffering a diabetic episode due to low blood sugar. His condition continued to deteriorate and his girlfriend, Melanie Worrall, called an ambulance for assistance. At 3:20 p.m., Star Emergency Medical Service was dispatched to Mr. Hill's home. Luke Streeter was one of the four paramedics to respond.

Mr. Hill was disoriented and confused when the paramedics first arrived. The paramedics introduced themselves to Mr. Hill and explained that they needed to check his sugar levels. However, Mr. Hill was not listening to the paramedics. He pulled away from them as they attempted to draw blood from his finger. He became increasingly uncooperative as they tried to help him. Eventually, Mr. Streeter was able to take Mr. Hill's blood sugar level and discovered that it was very low at 38. A normal blood sugar level is anywhere from 60 to 110. The doctor who later treated

Mr. Hill explained that if his blood sugar level "was not treated, it could continue to decrease and become fatal." *See* Def.'s Mot. for Summ. J., Ex. B at 14, ln. 23-24.

Defendant Oakland County Sheriff Deputy Christopher Miracle arrived to assist on the medical call at some time after Mr. Streeter was able to obtain blood from Mr. Hill's finger for testing. In his capacity as a law enforcement officer, Defendant Miracle had at least a dozen prior experiences with individuals suffering diabetic episodes. He understood that individuals suffering from such episodes "don't act in a normal capacity." He was also aware that such individuals are insensate, and not "focused to their surroundings."

At the time Defendant Miracle arrived on the scene, the paramedics were attempting to establish an IV on Mr. Hill so that 25 milligrams of dextrose could be administered to level out his blood sugar. All four paramedics were struggling to hold Mr. Hill down on his bed in order to establish the IV, however Mr. Hill was becoming increasingly combative.

At one point, Mr. Streeter was able to insert a catheter into Mr. Hill's arm, but Mr. Hill was able to rip the catheter from his arm. Thus, his vein was open and blood was spraying from his arm. Mr. Hill kicked, swung, and swore at the paramedics as they attempted to establish the IV. While Mr. Streeter recalls that Mr. Hill also kicked at Defendant Miracle, Defendant Miracle did not testify to this. Rather, Defendant

admits that he never attempted to restrain Mr. Hill. *Id.*, Ex. C at 17-18. The only time he was near Mr. Hill was when he deployed his taser. *Id.*

Plaintiff claims in his Response that Defendant was quite loud and belligerent and Ms. Worrall became agitated and upset and walked out of the bedroom. She told the Defendant multiple times that Mr. Hill had experienced diabetic episodes on prior occasions, that he was successfully contained each time, and the use of a taser was unnecessary.

Defendant Miracle described the use of his taser as "dry-stunning" where he held it directly against Mr. Hill's flesh for a few seconds, as opposed to shooting it from a distance. Defendant explained that he rarely deployed his taser in this manner because it was not recommended. Defendant touched Mr. Hill's thigh for only a moment. Defendant testified that he used the taser because he believed that Mr. Hill posed a threat to himself and paramedics. He further explained that:

> So in my estimation I thought the dry stun would be better than any type of, you know hands-on stuff and all the other–you know, because I didn't really know everything that was going on medically.

*See* Def.'s Mot. for Summ. J., Ex. C at 42.

After Defendant administered the taser, the paramedics were able to successfully establish a second IV in Mr. Hill's arm. This allowed the paramedics to provide Mr. Hill with a dose of dextrose which changed Mr. Hill's demeanor

-4-

immediately. Mr. Streeter described him as "an angel." Mr. Hill apologized when the paramedics explained that he had been aggressive with them. Mr. Streeter re-checked Mr. Hill's sugar level and obtained an EKG. Both tests were normal. Mr. Streeter did not recall observing the area on Mr. Hill's body where his taser made contact, but he does remember that Mr. Hill denied being in any pain at the time.

Mr. Hill was transported to McLaren Oakland Hospital in Pontiac for evaluation and treatment. Medical records from McLaren reveal that Mr. Hill had a "taser puncture wound" on his right thigh. However, no medical treatment was required in relation to this puncture wound. After this incident, Plaintiff claims Mr. Hill suffered burns on his legs and his diabetes worsened.

### III. LAW & ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored

procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270

(1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B. Qualified Immunity

Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016)(quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). In determining whether a law enforcement officer is entitled to qualified immunity on an excessive force claim, two questions must be evaluated. *Kent v. Oakland Cty.*, 810 F.3d 384, 390 (6th Cir. 2016). The first inquiry in the qualified immunity analysis is whether, based on the facts alleged and considered "in the light most favorable to the party asserting the injury," the official's conduct violated the plaintiff's constitutional rights under the Fourth Amendment.[1] *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the

---

[1] In *Dunfee v. Finchum*, No. 3:13-cv-378, 2015 U.S. Dist. LEXIS 126052, * 16 (E.D. Tenn. Sept. 21, 2015), the United States District Court for the Eastern District of Tennessee held that "when a responder to an emergency is acting to provide medical care, any force used in the process is analyzed under the standards of the Fourteenth Amendment substantive due process clause, rather than the Fourth Amendment prohibition against unreasonable searches and seizures." *Id.* However, *Dunfee* cites to *Peete v. Metro. Gov't of Nashville & Davidson Cnty.*, 486 F.3d 217, 221 (6th Cir. 2007), which does not state this rule of law. Moreover, the Sixth

district court finds a Fourth Amendment violation, the next step is to determine whether the right was clearly established at the time of the incident. *Id.* at 202. The district court may address the qualified immunity analysis in any order. *Kent*, 810 F.3d at 390. The plaintiff bears the ultimate burden of proof, *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) (citation omitted), and if the plaintiff fails to carry his burden as to either element of the qualified immunity analysis, then the official is immune from suit. *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012).

### 1. Fourth Amendment violation

To answer the question of whether Defendant Miracle's use of force violated the Fourth Amendment "turns on whether [his] actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Kent*, 810 F.3d at 390 (internal quotation marks omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Factors to consider are: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the

---

Circuit has employed the Fourth Amendment's reasonableness standard to evaluate claims of excessive force when a government official responds to a request for medical aid. *See Caie v. West Bloomfield Twp.*, 485 F. App'x 92 (6th Cir. Jun. 18, 2012). As such, the Court will analyze Plaintiff's claim under the Fourth Amendment, rather than the substantive due process clause.

officers or others, and (3) whether the suspect is actively resisting arrest or attempting to flee. *Id*. "The ultimate question, however, is whether the totality of the circumstances justifies a particular sort of seizure." *Kent*, 810 F.3d at 390 (internal quotation marks omitted). The district court "must take into account the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id.*

The Sixth Circuit has repeatedly held that "absent some compelling justification-such as the potential escape of a dangerous criminal or the threat of immediate harm–the use of [a stun gun] on a non-resistant person is unreasonable." *Caie v. West Bloomfield Twp.*, 485 F. App'x 92, 96 (6th Cir. Jun. 18, 2012); *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 496 (6th Cir. Feb. 23, 2012); *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010). Conversely, the Sixth Circuit has also stated that "[w]e have often found that the reasonableness of an officer's use of a taser turns on active resistance: When a suspect actively resists arrest, the police can use a taser to subdue him . . . ." *Kent*, 810 F.3d at 392 (internal quotation marks omitted). "Active resistance includes physically struggling with, threatening, or disobeying officers[,]" as well as "refusing to move your hands for the police to handcuff you, or fleeing from police." *Id.* (internal quotations and citations omitted).

As to the first *Graham* factor, the severity of the crime, Defendant was not dispatched to Hill's house because a suspected crime had been committed. Rather, he was there due to a diabetic episode. Therefore, Defendant's use of a taser under this circumstance weighs against a finding that he acted objectively reasonable under the circumstances. *Id*. at 390 (concluding that because the plaintiff was never arrested nor even warned that he could be detained was "one important consideration in the totality-of-the-circumstances analysis."); *see also Brown*, 814 F.3d at 459 (finding that the commission of misdemeanors would not be "severe enough to warrant the use of a taser.")

In support of his argument that he is entitled to qualified immunity, Defendant relies on *Caie, supra*. In *Caie*, police officers were dispatched to assist an intoxicated, depressed and suicidal nineteen year old. *Id*. at 93. When the police arrived, the plaintiff was chest-deep in a lake near his home. *Id.* at 94. The plaintiff was initially uncooperative with one of the officer's requests to get out of the water. *Id*. The plaintiff repeatedly told the officers that he wanted to die and asked what he could do that would lead them to shoot him. *Id.* He made comments about fighting the officers so they would have to kill him. *Id*. When the plaintiff finally exited the lake, he continued to behave erratically and repeated his statement about fighting the officers. *Id*. Plaintiff would not comply with the officers when they attempted to transport him

for medical care. *Id*. The officers eventually took the plaintiff to the ground in order to gain control of him and transport him to the hospital. *Id.* When he failed to move his hands behind his back so the officers could handcuff him, one of the officer's applied a taser once in the drive-stun mode to the left side of the plaintiff's back. *Id.*

The *Caie* court concluded that the officer's "single use of the taser in drive-stun mode did not violate Plaintiff's constitutional rights." *Id*. at 96. The *Caie* court rejected the plaintiff's argument that the officer's use of force was unreasonable because he was not being arrested for a crime. *Id*. Specifically, the *Caie* court reasoned in relevant part that:

> While it is true that Plaintiff was not being arrested for a crime, his consumption of a large quantity of alcohol and drugs, his erratic behavior, and his self-proclaimed desire to provoke the officers into using deadly force could lead reasonable officers to conclude that he was a threat to officer safety. Plaintiff admits that he was suicidal, meaning that, at a minimum, he was a threat to his own safety.
>
> *            *            *
>
> Although Plaintiff insists that he no longer posed a risk of harm or flight after being taken to the ground, there is no dispute that Plaintiff continued to be uncooperative by actively resisting the officers' attempts to secure his arms behind his back. In light of this resistance, we find that [the officer]'s single use of the taser in drive-stun mode was not gratuitous. Rather, it served the purpose of gaining control over a highly intoxicated, volatile, and uncooperative subject and neutralizing what a reasonable officer could perceive as a dangerous situation.

*Id.* at 97.

*Caie* is distinguishable from the circumstances of this case. While both Hill and the *Caie* plaintiff were not charged with a crime, the officers in *Caie* were confronted with an extremely intoxicated, suicidal individual who had made repeated statements about fighting the officers and was actively resisting the officers attempts to transport him to the hospital. *Caie*, 485 F. App'x at 94. Under those circumstances, the Sixth Circuit determined that the officers use of a taser was reasonable because the *Caie* plaintiff was a risk to the officers and himself. *Id.* at 96-97.

In the present case, Defendant was not faced with the same risks to his safety as the officers in *Caie*. Moreover, Defendant was aware that Hill was a diabetic and had previous experiences with individuals suffering from a diabetic episode. Therefore, he knew that Hill was insensate and not focused to his surroundings. *See Champion v. Nashville, Inc.*, 380 F.3d 893, 904 (6th Cir. 2004) ("The diminished capacity of an unarmed detainee must be taken into account when assessing the amount of force exerted."). Defendant also knew that the manner in which he used the taser–drive stun mode–was not recommended. Thus, he used a taser in a manner that was not recommended on an individual suffering from a diabetic episode even though he "didn't really know everything that was going on medically."

Additionally, Defendant was in Hill's home, "one of the most sacred of spaces under the Fourth Amendment's protections." *Kent*, 810 F.3d at 394. While officers

can use reasonable force in such a setting, an immediate threat to the safety of the officers or others must be present. *Id.* Here, Hill posed absolutely no threat to Defendant's safety. Defendant admits that he was nowhere near Hill until he deployed his taser.

At all times, Hill was on his bed with four paramedics surrounding him. Therefore, Hill was in a confined space and any danger could have been eliminated by simply stepping away from him. Hill's actions do not fit within the definition of active resistance, which is required to be present for the use of a taser to be considered reasonable. "Active resistance includes physically struggling with, threatening, or disobeying *officers*[,]" as well as "refusing to move your hands for the *police* to handcuff you, or fleeing from *police*." *Id.* at 392 (emphasis supplied). Nor was Hill attempting to flee during the incident.

Therefore, the second and third *Graham* factors also favor a finding that Defendant acted objectively unreasonable when he tasered Plaintiff. Under the totality of the circumstances, a jury could conclude that Defendant's use of a taser was objectively unreasonable.

### 2. Clearly Established

The next question this Court must resolve is whether "the right was clearly established at the time of the alleged violation." *Campbell v. City of Springboro*, 700

F.3d 779, 786 (6th Cir. 2012). "For a right to be clearly established, the contours of the rights must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202. "Although it need not be the case that the very action in question has previously been held unlawful, . . . in light of the pre-existing law the unlawfulness must be apparent." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992).

Here, the Court must determine whether, in June of 2013, it would be clear to a reasonable officer that it was excessive force to use a taser on an individual who was not under arrest and not resisting arrest and posed no risk to the officers safety. The pre-existing law makes it sufficiently clear that a reasonable officer in Defendant's position would know that such conduct was unlawful under the circumstances. "[S]ince mid-2005, the general consensus among our cases is that officers cannot use force . . . on a detainee who has been subdued, is not told he is under arrest, and is not resisting arrest." *Kent*, 810 F.3d at 396 (internal quotation marks omitted); *see also, Thomas v. Plummer*, 489 F. App'x 116, 126-29 (6th Cir. 2012)(finding that as of 2009, an officer's use of a taser on a once-disobedient suspect who had stopped

resisting violated clearly established law); *Kijowski v. City of Niles*, 372 F. App'x at 600-01 (use of taser on an unresisting suspect violated his clearly established rights).

Defendant relies on *Dunfee v. Finchum*, No. 3:13-cv-378, 2015 U.S. Dist. LEXIS 126052 (E.D. Tenn. Sept. 21, 2015) to support his qualified immunity defense. In *Dunfee*, officers were dispatched when the plaintiff, who was traveling in the backseat of a car, began foaming at the mouth and seizing. *Id.* at *2. When the first officer arrived on the scene, the plaintiff was acting delirious, became combative and began yelling. *Id*. at *2-3. While the officer was attempting to subdue the plaintiff, the plaintiff headbutted and kicked the officer in the groin. *Id*. at *3. During the struggle, other officers arrived on the scene. *Id*. at *4. The officers were able to pull the plaintiff from the vehicle. *Id.* However, he struggled with the officers and bit one of them while they were attempting to get him on a medical cot. *Id.* During the struggle, one of the officers deployed his taser in the stun mode on two occasions. *Id*.

The *Dunfee* court ultimately concluded that "the contours of the right [the officer] is alleged to have violated were not so clear in June of 2012 that every reasonable officer" would have understood "that a person suffering from a medical condition, who became combative toward *police officers*" had a right to not be tasered.

*Id*. at \*21-22 (emphasis supplied).

*Dunfee* is distinguishable from the circumstances here. Hill was not combative with Defendant. Defendant did not approach Hill and attempt to assist the paramedics. Based on the state of the law in 2013, Defendant violated Plaintiff's clearly established right when he tasered him. Defendant is not entitled to qualified immunity.

### C. State Law Claims

#### 1. Assault and Battery

"An assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich. App. 110, 119 (1991). A battery is defined as "the willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.*

A government employee is not immune from liability for intentional torts, including the tort of assault and battery. However, a governmental officer's actions that would normally constitute intentional torts are shielded from liability if those actions are justified because they were objectively reasonable under the

circumstances. *Brewer v. Perrin*, 132 Mich. App. 520, 528 (1984).

Defendant argues that Plaintiff cannot establish Mr. Hill suffered from a well-founded apprehension of imminent contact from Defendant since Plaintiff admits that Mr. Hill "was literally not in his right mind" and "was not oriented to time and place, and was not cognizant of his surroundings." *See* Plf.'s Resp. at 15. Defendant further asserts that he is entitled to governmental immunity. Specifically, he asserts his actions in administering a taser in stun mode to subdue a combative citizen whose medical condition was swiftly deteriorating to his potential peril was objectively reasonable under the circumstances. As such, Defendant maintains that Plaintiff's assault and battery claim must fail as a matter of law.

Plaintiff counters that the Defendant is not entitled to governmental immunity because he deployed his taser without attempting any other means of restraining Mr. Hill. Plaintiff asserts that he was in a confined space and any danger could be eliminated by simply stepping away from him. Therefore, the force used was unreasonable.

The Court concludes a jury could find that Defendant's actions were unreasonable under the circumstances. Defendant knew Mr. Hill was suffering from a diabetic episode, that he was in his bedroom and not attempting to flee. There was no threat of immediate harm to Defendant or the paramedics, who could have stepped

away from Mr. Hill at any time. Defendant is not entitled to governmental immunity on Plaintiff's assault and battery claim.

### 2. Intentional Infliction of Emotional Distress

To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation and (4) the severe emotional distress of the plaintiff. *Lucas v. Awaad*, 299 Mich. App. 345, 359 (Mich. Ct. App. 2013). Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Id.*

Defendant argues that Plaintiff cannot establish his actions were so outrageous in character as to go beyond all possible bounds of decency. Additionally, Plaintiff cannot show Defendant's intent or recklessness. Nor has Plaintiff shown that Mr. Hill experienced severe emotional distress as a result of Defendant's actions. The only resulting injuries that Plaintiff has identified are "burns on legs and diabetes got worse." Such injuries do not support Plaintiff's claim of intentional infliction of emotional distress.

Plaintiff counters that Defendant's conduct was extreme and outrageous

because he decided to administer a taser to Mr. Hill in the presence of his girlfriend and children. While a jury might conclude that Defendant's conduct was extreme and outrageous, it still could not find in favor of Plaintiff on his intentional infliction of emotional distress claim. Defendant is correct in arguing that Plaintiff will be unable to establish the elements of this claim. Plaintiff has failed to come forward with any evidence demonstrating Mr. Hill experienced severe emotional distress. Plaintiff indicates that Mr. Hill suffered burns on his legs and that his diabetes got worse after the incident on June 23, 2013. Such injuries do not support Plaintiff's assertion that Mr. Hill experienced severe emotional distress. Therefore, Plaintiff cannot establish the third element of his claim and Defendant is entitled to summary judgment in his favor on Plaintiff's intentional infliction of emotional distress claim.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment [#34] is GRANTED IN PART and DENIED IN PART. Count III–Intentional Infliction of Emotional Distress–is DISMISSED.

SO ORDERED.

Dated:   June 3, 2016         /s/ Gershwin A. Drain
                              GERSHWIN A. DRAIN
                              UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 3, 2016, by electronic and/or ordinary mail.
<u>/s/ Tanya Bankston</u>
Case Manager